## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **W. DOUGLAS MATTHEWS, and** | ) | |
| **THE MATTHEWS LAW FIRM** | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | CIVIL ACTION FILE NO. |
| v. | ) | |
| | ) | |
| **LFR COLLECTIONS, LLC;** | ) | |
| **GEROVA FINANCIAL GROUP,** | ) | |
| **LTD; GEROVA ASSET BACKED** | ) | |
| **HOLDINGS, LP; STILLWATER** | ) | |
| **ASSET-BACKED FUND, LP;** | ) | |
| **STILLWATER FUNDING, LLC;** | ) | |
| **STILLWATER ASSET BACKED** | ) | |
| **OFFSHORE FUND, LTD;** | ) | |
| **STILLWATER CAPITAL** | ) | |
| **PARTNERS, LLC; PARTNER** | ) | |
| **REINSURANCE COMPANY,LTD;** | ) | |
| **RICHARD RUDY and JACK** | ) | |
| **DOUECK** | ) | |
| | ) | |
| Defendants | ) | |

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Comes Now  Plaintiffs, **THE MATTHEWS LAW FIRM and W.**

**DOUGLAS MATTHEWS** (herein after Plaintiffs) and file their Complaint under

the provisions of 42 USC § 1983 and seek injunctive relief from LFR Collections,

LLC (herein after LFR) and damages from each of the Defendants for Defendants

violation of each of the Plaintiffs rights guaranteed to them under The Fourteenth

Amendment to the United States Constitution.  Plaintiffs have had their due

process rights taken by the Defendants acting jointly under the color of state law.

Plaintiffs seeks to enjoin  LFR from the prosecution of an action to Domesticate a

judgment issued by the Supreme Court of New York and to prevent these

Defendants from violating Plaintiffs' constitutional rights until this Court shall

determine whether Plaintiff's civil rights have been violated by the manner in

which that judgment in the Supreme Court of New York was obtained with regard

to these Plaintiffs and to set that judgment aside. Plaintiffs show this Honorable

Court as follows:

## THE PARTIES

Plaintiff, W. Douglas Matthews, is an individual resident of the State of

Texas, with a principal business mailing address of 3200 Southwest Freeway, Suite

1100, Houston, Texas 77027.

Plaintiff, The Matthews Law Firm, is the d/b/a for the law practice operated

by Plaintiff W. Douglas Matthews in the State of Texas, with a principal place of

business located at 3200 Southwest Freeway, Suite 1100, Houston, Texas 77027.

Defendant LFR as Acquirer of Certain receivables of the Stillwater Asset-

Backed Fund, LP, is upon information and belief, a limited liability company

formed in New York, with its principal place of business located at One Greenwich

Plaza, Greenwich, Connecticut 06830.  Accordingly, this Third Party Defendant

may be served with citation by serving the Texas Secretary of State at 1019 Brazos

Street, Austin, Texas 78701, as its agent for service because this Defendant has not designated or maintained a resident agent for service of process in Texas, as required by statute, while it engages in business in Texas.

Defendant Gerova Financial Group, LTD (Gerova), is upon information and belief, a foreign Limited Partnership, with its principal place of business located at 1 Victoria Street, Cumberland House, Hamilton, HM 11, Bermuda.  Accordingly, this Defendant may be served with citation by serving the Texas Secretary of State at 1019 Brazos Street, Austin, Texas 78701, as its agent for service because this Defendant has not designated or maintained a resident agent for service of process in Texas, as required by statute, while it engages in business in Texas.

Defendant Gerova Asset Backed Holdings, LP, (Gerova) is a foreign Delaware Limited Partnership, with its principal place of business located at 41 Madison Avenue, New York, New York 10010.  Accordingly, this Defendant may be served with citation by serving the Texas Secretary of State at 1019 Brazos Street, Austin, Texas 78701, as its agent for service because this Defendant has not designated or maintained a resident agent for service of process in Texas, as required by statute, while it engages in business in Texas.

Defendant Stillwater Asset-Backed Fund, LP (Stillwater) is a limited liability company formed in Delaware, with its principal place of business located at 41 Madison Avenue, New York, New York 10010.  Accordingly, this Defendant

may be served with citation by serving the Texas Secretary of State at 1019 Brazos Street, Austin, Texas 78701, as its agent for service, because Third Party Defendant has not designated or maintained a resident agent for service of process in Texas, as required by statute, while it engages in business in Texas.

Defendant Stillwater Funding, LLC (Stillwater) is a limited liability company formed in Delaware, with its principal place of business located at 41 Madison Avenue, New York, New York 10010. Accordingly, this Defendant may be served with citation by serving the Texas Secretary of State at 1019 Brazos Street, Austin, Texas 78701, as its agent for service, because Third Party Defendant has not designated or maintained a resident agent for service of process in Texas, as required by statute, while it engages in business in Texas.

Defendant Stillwater Asset Backed Offshore Fund, LTD (Stillwater) is a limited liability company formed in Delaware, with its principal place of business located at 41 Madison Avenue, New York, New York 10010. Accordingly, this Defendant may be served with citation by serving the Texas Secretary of State at 1019 Brazos Street, Austin, Texas 78701, as its agent for service, because this Defendant has not designated or maintained a resident agent for service of process in Texas, as required by statute, while it engages in business in Texas.

Defendant Stillwater Capital Partners, LLC (Stillwater) is a limited liability company formed in Delaware, with its principal place of business located at 41

Madison Avenue, New York, New York 10010.  Accordingly, this Defendant may be served with citation by serving the Texas Secretary of State at 1019 Brazos Street, Austin, Texas 78701, as its agent for service, because this Third Party Defendant has not designated or maintained a resident agent for service of process in Texas, as required by statute, while it engages in business in Texas.

Defendant Partner Reinsurance Company (Partner Re), upon information and belief, is a Connecticut company with its principal place of business at One Greenwich Plaza, Greenwich, Connecticut 06830.  It does not have a registered agent in Texas for service of process. Accordingly, this Defendant may be served with citation by serving the Texas Secretary of State at 1019 Brazos Street, Austin, Texas 78701, as its agent for service, because this Third Party Defendant has not designated or maintained a resident agent for service of process in Texas, as required by statute, while it engages in business in Texas.

Defendant Richard Rudy (Rudy) is an individual and a principal of Stillwater who may be served with process by serving him at his home office which is believed to be located at 41 Madison Avenue, New York, New York 10010, or wherever he may be found. Defendant Rudy may be served with citation by serving the Texas Secretary of State at 1019 Brazos Street, Austin, Texas 78701, as authorized by TEX. CIV. PRAC. AND REM. CODE 17.045 because this Defendant does not have an agent for the service of process in Texas.

5

Defendant Jack Doueck (Doueck) is an individual and a principal of ⬚Stillwater⬚ who may be served with process by serving him at his home office which is believed to be located at 41 Madison Avenue, New York, New York 10010, or wherever he may be found. Defendant Doueck may be served with citation by serving the Texas Secretary of State at 1019 Brazos Street, Austin, Texas 78701, as authorized by TEX. CIV. PRAC. AND REM. Code 17.045 because this Defendant does not have an agent for the service of process in Texas.

## JURISDICTIONAL ALLEGATIONS

Jurisdiction of this Court is based on the provisions of 28 USC § 1331 because Plaintiffs claim that their constitutional rights to due process of law has been violated and claim a cause of action under the provisions of 42 USC § 1983. Venue is proper in this Court because the actions complained of took place within the confines of the Southern District of Texas and of the Houston Division. Further, Plaintiffs reside within the confines of the Southern District of Texas and of the Houston Division or maintains its offices in that location.

## FACTUAL BACKGROUND

1.      Plaintiffs adopt the affidavit of W. Douglas Matthews as Exhibit "A" to establish facts not apparent from the record, and the affidavit and all exhibits to the affidavit are adopted and incorporated by reference.

2.      The public documents and court records (Exhibits "1" through Exhibit "14" to Exhibit "A") assembled by Plaintiffs show some, if not all, of the Defendants worked in concert with Defendant Stillwater and themselves in a massive scheme to turn bad investments into capital and to attempt to protect against the liability from both investors and original borrowers like Plaintiffs W. Douglas Matthews and The Matthews Law Firm.

3.      Exhibit "B" is an affidavit from Brian Spira, an agent of Oxbridge and Stillwater who states that Stillwater continued in 2009 to underfund and refuse to fund loan requests from contingent fee lawyers such as Plaintiffs.

4.      On October 17, 2007, the Plaintiffs entered into a credit agreement with Stillwater. Stillwater made its sales pitch to Plaintiffs in Texas and solicited the credit agreements with Plaintiffs in Houston, Texas. Plaintiff W. Douglas Matthews signed a personal guarantee to the credit agreement.  Plaintiffs entered into that agreement with Stillwater based upon Stillwater's reputation and self-marketing as a lender that would both advance funds and help in the general growth of a law firm like that of Plaintiff The Matthews Law Firm.   These Plaintiffs were assured by Stillwater through its agent Oxbridge that Stillwater was able to and would fully fund the firm's new line of credit with Stillwater. Plaintiff believed that Stillwater had the financial capital to continue funding the loans under the contract no matter what the general economic climate might be.

5.      Stillwater continually encouraged Plaintiff to increase their line of credit and to borrow more. Then, when the Plaintiffs were at a critical time in their practice, Stillwater became illiquid and ceased funding even though Stillwater continued to charge Plaintiffs a 2% fee in order to maintain a reserve account to insure that funds were available to fund Plaintiffs draw request.  Beginning in August 2009, Stillwater began denying and delaying funding draw requests, when requests had been funded in the past without exception and when requested. This was done, in spite of the fact that approximately $800,000 of the line of credit had not been used by Plaintiffs despite the fact that Stillwater continued to charge Plaintiffs a 2% fee on the unfunded part of the line of credit. Stillwater's failure to fund as promised severely damaged the Matthews Law Firm, including the loss of many cases and the reduction of their ability to prosecute pending cases.

6.      Reviews of the substantial and lengthy records in numerous filings against the designated Defendants explain that in April or May of 2008 Stillwater became illiquid as a result of redemption demands made by Stillwater investors that eventually amounted to demands in excess of $150 million.

7.      Soon after Stillwater defaulted on Plaintiffs' line of credit in 2009, it began to move its assets to various entities.  Stillwater transferred the rights to the line of credit of W. Douglas Matthews and The Matthews Law Firm to Stillwater Funding, LLC as a part of a Stillwater securitization scheme.  Upon information

and belief, supported by the documents attached to Exhibit "A", it is believed that at least part of the path was as follows: Stillwater pledged its interest in the assets of Plaintiffs The Matthews Law Firm and W. Douglas Matthews to Stillwater Funding LLC.  Thereafter, any interests in assets that Stillwater Asset Backed Fund II, LP had were also transferred to Stillwater Funding LLC.  Stillwater Asset Backed Fund, LP also transferred all of its interests to Stillwater Asset Backed Offshore Funding, Ltd, which then transferred them to Stillwater Funding. Stillwater Asset Backed Fund, LP also transferred the Plaintiffs' The Matthews Law Firm and W. Douglas Matthews loan to Gerova in December 2009. Gerova is in a Chapter 15 Bankruptcy proceeding in New York. A copy of a letter from Gerova to Plaintiffs is attached as Exhibit "C" indicating that Gerova had purchased all of the assets of Stillwater Funding, LLC as of December 31, 2009. Gerova ceased to do business in March 2011 became subject to a winding up (Bankruptcy) proceeding on October 7, 2011.

8.	Thereafter in June 2011, Defendant Stillwater Funding, LLC pledged all of its assets to Wilmington Trust Company to secure the payment on a note, which was purchased by Defendant Partner Re.  Then when Stillwater Funding LLC defaulted on its obligations, Partner Re sought to foreclose and with the aid of Stillwater and Gerova participated in a private foreclosure in June 0f 2011 in New York, that on information and belief is prohibited by New York law, on the assets

held by Stillwater Funding LLC. Later, in June of 2011, an agreement was reached between Defendants Partner Re and Stillwater Funding whereby Stillwater Funding sought to avoid liability from borrowers like the Plaintiffs yet receive money from the collection efforts. Because Stillwater continued to have an interest in the foreclosed property a presumption of fraud exist that the foreclosure claimed by Partner Re did not occur or that the foreclosure was only for the purpose of defrauding individuals including Plaintiff and the court.   LFR Collections, LLC, a wholly owned subsidiary of Partner Re, was created to collect these funds and to attempt to avoid the defenses of its attorney borrowers.

9.      In August 2012, a suit for collection on the Plaintiff's loan was initiated in New York by LFR, a party other than Stillwater that claims to own the right to sue Plaintiffs on the revolving credit note, credit agreement, security agreement and UCC-1 Financing Statement. LFR is not a holder in due course of the Plaintiffs loan documents. That suit is maintained in a summary proceeding under New York procedural law allowing no substantial due process, no discovery, no counterclaims and no method of presenting evidence into the record at the time of the summary judgment hearing. LFR's summary proceeding against Plaintiffs is based on an affidavit that contains unauthenticated documents that requires the Judge to whom that case is assigned to presume that the facts contained in the affidavit are true. The procedural law of New York invoked by LFR is designed to

prevent Plaintiffs and others from raising defenses or contesting the validity of the assertions in the supporting affidavit.

10.     The summary proceeding in New York resulted in a judgment being granted against Plaintiff on June 4, 2012.

11.     On January 17, 2013, a Bankruptcy Court Decision was entered in the Stillwater Bankruptcy. That decision revealed that vertical slices (a term used by the Bankruptcy Court to explain that Stillwater was delivering interest in Stillwater's interest in Law Firm loans in lieu of redemption demands of Stillwater investors) of the Plaintiff's loan were transferred and conveyed to Stillwater investors in 2009 or 2010.

12.     In an affidavit by Jack Doueck (filed in a lawsuit against Stillwater) Doueck confirms that 8.58% of all law firm loans, including the Plaintiff's loan, were conveyed to investors in 2009 or 2010.

13.     On December 31, 2009, Stillwater and Gerova entered into an Asset Purchase Agreement by which Gerova acquired the "affected assets" (subject to redemptions and taxes) in exchange for stock.

14.     In an audit of Stillwater, dated November 11, 2010, for the period ending December 31, 2009, over $150,000,000.00 in redemption requests existed on overvalued assets of Stillwater that was also facing an $85,000,000.00 tax liability.

15.     Stillwater's loan to Plaintiffs, now securitized, overvalued and fractionalized (in violation of Master Agreements with investors) was transferred to Gerova and managed by Stillwater's general partner.

16.     On January 10, 2011, the "Dalrymple Report" was published, and it identified that the Stillwater and Gerova transaction as a "Ponzi scheme." The Gerova transaction with Stillwater was never completed, and by April 2011, Stillwater and Gerova entered into a letter of intent to unwind the sale.

17.     Beginning in March 2011, numerous lawsuits against Stillwater and Gerova were filed by investors across the United States. In these actions, Gerova and Stillwater were accused of fraud and breach of fiduciary duties.

18.     In June 2011, Partner Re took back all securitized assets from Stillwater in a private foreclosure without notice to investors or third parties. Even though the June 2011 transaction was called a foreclosure Stillwater retained an interest in the assets that were allegedly foreclosed on and therefore the alleged foreclosure was a sham.

19.     Gerova became subject to Bankruptcy in October 2011 and Stillwater and Gerova both ended up in bankruptcy proceedings in New York in late 2012.

20.     After the bankruptcy filings and the January 17, 2013 bankruptcy decision, the following parties may own an interest in the Plaintiff's loan:

a) Stillwater Asset Backed Fund LP;

b) Stillwater Asset Backed Fund Off Shore Ltd.;

c) Stillwater Asset Backed Fund II

d) Gerova;

e) Investors in Stillwater Asset Backed Fund

f) The Trustee in Bankruptcy in the Gerova bankruptcy;

g) The Trustee in Bankruptcy in the Stillwater Asset Backed Fund Off Shore Ltd. bankruptcy;

h) LFR;

i) The Internal Revenue Service; and

j) Unknown third parties.

21.     According to the United States Bankruptcy Court Order of January17, 2013, Stillwater had transferred all of its assets to Stillwater Off Shore, an offshore corporation of the Cayman Islands and had formed a special purpose vehicle (SPV)

into which the assets of Stillwater were transferred including the note and receivable of the Plaintiffs.  The Bankruptcy Court indicated that there were such conflicting interests to the assets of the various Stillwater entities including Gerova that it was necessary for the appointment of a trustee in order to determine which entity or entities are currently holding the assets of  the Stillwater entities including Plaintiffs' loans.

22.    Because the laws of New York allow for a summary proceeding to be filed for the collection of money owed on indebtedness, like that to which these Plaintiffs are a party, the Plaintiffs are prohibited from challenging the propriety of the underlying claims without posting a surety bond.  The procedures employed by LFR in its claims against these Plaintiffs violate the Plaintiffs due process rights guaranteed to them under the United States Constitution.

23.    On or about July 1, 2013, a hearing was held before the District Court of Harris County, Texas, 55th Judicial District regarding LFR's domestication proceeding.  The Court determined that it would not stay LFR's proceeding to domesticate its New York judgment.

24.    On July 24, 2013, LFR filed its Motion for Turnover Order and Appointment of Receiver to take all the assets of the Plaintiffs in accordance with the New York judgment.  Unless LFR is enjoined from the actions to seize all the assets of the Plaintiffs, Plaintiffs due process rights guaranteed to them under the

4th and14[th] Amendments to the United States Constitution will be violated by the actions of LFR.  LFR is acting under the color of state law and is subject to the provisions of 42 U.S.C. § 1983.  If LFR is not restrained Plaintiffs will be irreparably damaged.

## COUNT 1 FOR INJUNCTIVE RELIEF

25.    Plaintiffs show this Honorable Court that their Constitutional rights to have their property secure and not seized without due process of law has been violated by the actions of each of the Defendants.  That unless LFR, Partner Re, Gerova and Stillwater are enjoined from further seeking to domesticate that judgment of the Supreme Court of New York and implementing their turnover order and request for appointment of receiver, Plaintiffs will be irreparably harmed.  Further, the actions of each of the Defendants are in violation of Plaintiffs' constitutional rights guaranteed to them under the 4th and 14th Amendments to the United States Constitution.

Wherefore, Plaintiffs pray that this Court enter an order preventing each of the Defendants from further actions that amount to a taking of Plaintiffs' property without due process of law and from further enforcement of any orders or judgments of the Supreme Court of New York by which they contend that they are entitled to take, seize, marshal, freeze or prevent Plaintiffs from the use of their money and other property.

Unless these Defendants are restrained from continuing to violate Plaintiffs'
due process rights these Defendants will cause irreparable harm to Plaintiffs.

## COUNT 2 FOR DAMAGES

26.     Plaintiffs are entitled to damages under the provisions of 42 U.S.C § 1983
for the violation of Plaintiffs' constitutional rights.  Plaintiffs have had a judgment
rendered against them, have suffered the embarrassment of having to have a
judgment become public notice to banking institutions at which they have
previously enjoyed good relations, will have their credit impaired as a result of the
actions of these Defendants and will otherwise suffer monetary and financial harm.
Plaintiffs show that they are entitled compensatory damages, general damages,
punitive damages and attorney's fees in an amount of more than $10,000,000.00.

27.     Plaintiffs further pray that this Court grant such other and further relief as it
deems just and equitable under these circumstances.

## COUNT 3 FOR VIOLATIONS OF THE PROVISIONS OF
## THE FEDERAL CIVIL RICO ACT

28.     Plaintiffs herewith re-allege and restate paragraphs 1 through 27 into this
Count 3 of the Counterclaim as though they were restated herein.

 29.     Stillwater, its assigns, and each of the Defendants that claim an interest in
the obligations of Plaintiffs to Stillwater constitute an enterprise for the collection
of illegal debt. The enterprise consists of those entities that either directly or
indirectly claim money owed by Plaintiffs as a result of the charge of fees for the

16

maintenance of a non-existent capital account from which Stillwater and its assigns were to advance money to the Plaintiffs from that line of credit obligation, which is the debt claimed by LFR in the underlying litigation.

30.     Each of the Defendants claims a monetary interest in the debt that forms the basis of the underlying litigation, and have threatened Plaintiffs with financial ruin if those debts are not paid in full. Each of the Defendants has engaged in the extension of extortionate credit and the extortionate collection of debt in violation of the statutes of the United States. The Defendants' violations of those statutes are predicate acts under the Federal Civil RICO Act.

31.     These Defendants have engaged in these extortionate practices on more than one hundred (100) occasions and continue to engage in these practices.

32.     Plaintiffs have been damaged in their property as a result of these extortionate acts and have suffered financial loss therefrom. While the exact amount of the financial loss is unknown to Plaintiffs at this time, the amount exceeds $10,000,000.00. Under the provisions of the Federal Civil RICO Act, Plaintiffs are entitled to treble damages, and their attorneys' fees. Additionally, Plaintiffs are entitled to the remedy of the cancellation of any debt claimed to be owed by any of the named Defendants herein, and as is more fully set out in the underlying litigation.

WHEREFORE Plaintiffs pray that they be granted a judgment under the Federal Civil RICO Act, and that they be awarded damages, treble damages, their attorneys' fees and the cancellation of the debt claimed in the underlying litigation.

## COUNT 4 FOR BREACH OF CONTRACT

33.     The Plaintiffs incorporate the above allegations as if the same were set forth at length herein.

34.     There is a valid and enforceable contract between the Matthews Plaintiffs and Stillwater in the form of the Credit Agreement agreed to on October 17, 2007.

35.     Under the terms of the Credit Agreement, Stillwater had an obligation to supply financing to Plaintiffs so that the firm could properly maintain its case load and generally conduct its day-to-day business.

36.     Stillwater repeatedly breached the credit agreement with Plaintiffs, Douglas Matthews and the Matthews Law firm by refusing Plaintiffs' loan requests during the summer and fall of 2009.  Such breaches of contract also confirm the fraud perpetrated on Plaintiffs by inducing them to enter into the line of credit.  In addition to punitive damages for fraud in the inducement and fraud on the court, Plaintiffs seek actual and compensatory damages for the loss of clients and loss of income caused by such breaches.

## COUNT 5 FOR FRAUD

37.     Stillwater's refusals to honor the loan requests of The Matthews Law Firm under the Credit Agreement is evidence that it had fraudulently misrepresented its financial ability to make loans under the Credit Agreement to W. Douglas Matthews and the Matthews Law Firm.

38.     Stillwater made these misrepresentations about its financial condition fraudulently and with the intent that W. Douglas Matthews and The Matthews Law Firm would rely on them.

39.     Stillwater failed to inform W. Douglas Matthews and The Matthews Law Firm that Stillwater lacked the ability to fully fund their loan requests for $2,000,000, the amount agreed to in the contract.

40.     W. Douglas Matthews and The Matthews Law Firm relied on Stillwater's representations regarding its ability to fund their line of credit to their substantial detriment.

41.     W. Douglas Matthews and The Matthews Law Firm have suffered damages as a result of their reliance on the misrepresentations of Stillwater concerning its ability to fund loans pursuant to their line of credit.

## COUNT 6 FOR ATTORNEY'S FEES

42.     Plaintiffs seek reasonable attorney's fees and expenses for trial and/or appeal of this lawsuit.  All conditions precedent to recovery of said fees have been satisfied.

## COUNT 7 FOR ACTUAL AND PUNITIVE DAMAGES

43.     Plaintiffs are entitled to and hereby seek actual damages for the substantial economic losses they have suffered as a result of the negligence, improper conduct, intentional conduct and fraud of the Defendants. Such actions resulted in the loss of many new clients and the associated attorney's fees as well as the resulting inability for lack of funds to develop, discover, settle and try the cases of pending clients.

44.     At the outset, Defendant Stillwater falsely claimed that it had the funds to fully satisfy the subject line of credit and would do so, thereby inducing Plaintiffs to enter into and rely upon the line of credit.  Later, Stillwater continued to refuse to honor its obligations under the line of credit.  There was thus clear fraud in the inducement of Plaintiffs to enter into the line of credit.

45.     Moreover, in failing to inform the New York court of the allegations of fraud and that LFR was not a holder in due course, the Defendants sought and obtained the Judgment in this cause by fraud.

46.     For the repeated misconduct and fraud of Defendant Stillwater as well as the repeated misconduct and fraud of the Defendants, Plaintiffs seek punitive damages in a just and reasonable sum.

        WHEREFORE, PREMISES CONSIDERED, and for the reasons stated herein, Plaintiffs pray that Defendants take nothing pursuant to the subject

Judgment; that the Defendants be cited to appear and answer herein; and that Plaintiffs recover judgment against Defendants, jointly and severally, for actual damages and for punitive damages in amounts to be assessed by the jury at the time of trial; for pre-judgment interest and post-judgment interest at the maximum allowable rate as provided by law; for costs of court; for reasonable attorney's fees; and for all other and further relief, at law in equity, to which Plaintiffs may be justly entitled.

## COUNT 8 FOR CONSPIRACY

47.    Plaintiffs herewith re-allege and restate paragraphs 1 through 46 into this Count 8 of the Complaint as though they were restated herein.

48 .   Each of the Defendants named herein have conspired with each other in order to damage Plaintiffs. Each of the Defendants has either expressly or tacitly entered into the conspiracy by having the requisite knowledge of the underlying purposes of the conspiracy and by doing an act in the furtherance of the conspiracy. For example, each of the Defendants have claimed an entitlement to fees and interests for the maintenance of sufficient capital in order to fund Plaintiffs draw requests when each of the conspirators knew that no such funds were available.

WHEREFORE each of the Defendants is jointly and severally liable to Plaintiffs under each of the Counts set out above, and for those damages set out in each of the above referenced Counts of this Complaint.

Respectfully submitted this 8th day of August 2013.

/s/ *W. Douglas Matthews*_____
W. Douglas Matthew
State Bar No.: 13228000
wdmatthews@matthewslawfirm.com
The Matthews Law Firm
3200 Southwest Freeway, Suite 1100
Houston, Texas  77027
713/961-0246
713/961-0384 fax
Attorney for W. Douglas Matthews,
individually and The Matthews Law Firm

The Matthews Law Firm
3200 Southwest Freeway, Suite 1100
Houston, Texas  77027
713/961-0246
713/961-0384 fax
wdmatthews@matthewslawfirm.com