UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| W DOUGLAS MATTHEWS, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:13-CV-2311 |
| | § | |
| LFR COLLECTIONS LLC, *et al*, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

Pending before the Court are Defendants LFR Collections LLC ("LFR") and Partner Reinsurance Ltd.'s ("PartnerRe") Motion to Dismiss (Doc. 11) and Defendants Stillwater Capital Partners, LLC, Stillwater Funding, LLC, Gerova Asset-Backed Holdings, LP, formerly known as Stillwater Asset-Backed Fund, LP, Richard Rudy and Jack Doueck's (collectively, the "Stillwater Defendants") Motion to Dismiss (Doc. 21). Having considered the motions and responses, the facts in the record and the applicable law, the Court concludes Defendants' Motions to Dismiss (Docs. 11, 21) should be granted.

I.      **Background**

This is a suit for injunctive relief and damages arising out of an unpaid loan. Plaintiff-debtors The Matthews Law Firm and W. Douglas Matthews (collectively "MLF") seek to enjoin a judgment enforcing the loan issued by the New York County Supreme Court on grounds of violations of Plaintiffs' constitutional rights under the Fourteenth Amendment, inter alia. On October 17, 2007, MLF entered into a $2 million revolving commercial loan facility for MLF's working capital, set forth in a Credit Agreement (Doc. 11, Exh. A at 66), Note (Doc. 11, Exh. A at 60), Security Agreement (Doc. 11, Exh. A at 78), and Unlimited Guarantee signed by Mr.

Matthews. Doc. 11, Exh. A at 93. The Credit Agreement provides the Lender "sole discretion" to approve draw requests (Doc. 11, Exh. A at 66, 73, 76) and states MLF "may not make any borrowings" after July 17, 2009. Doc. 11, Exh. A at 74. MLF made 22 draw requests prior to July 17, 2009, totaling $1,999,843.13, which were funded. Doc. 11, Exh. A at 105-130. MLF made 4 requests after July 17, 2009, totaling $205,198.08, of which $185,000 was funded. Doc. 11, Exh. A at 117-118. On October 17, 2009, MLF failed to pay off the loan on maturity. Pursuant to the loan documents (Doc. 11, Exh. A at 62, 96), LFR filed suit in New York County Supreme Court. Doc. 11, Exh. A at 498. On March 15, 2012, Judge Barbara R. Kapnick entered summary judgment against MLF of $2,224,858.76 plus prejudgment interest and costs. Doc. 11, Exh. A at 26. The judgment incorporated an oral ruling in which the judge found:

> Obviously, this agreement was a very -- was a very clear agreement. It was certainly signed by a lawyer and engineered by a law firm. That is what they did, they lent money to the law firm, and . . . the loan had matured. The loan clearly says in the paragraph pointed out by Plaintiff's counsel that the borrower understands that and acknowledges that the making of any loan shall rest in the sole discretion of the lender. . . . Certainly, this was an arm's length agreement. It's very clear what Plaintiff does and very clear what Defendant does. And, unfortunately, I do think that the documents were clearly conceived to be subject to motions for summary judgment in lieu of complaint, and I don't think anything that you have argued, with all due respect, would in any way convince me to go the other way.

Doc. 11, Exh. A at 43-44. The court granted a hearing on a motion for reargument, in which it directed the parties to mediation under a 30-day stay. Doc. 11, Exh. A at 588. During that time, MLF's counsel withdrew for lack of payment. Doc. 11, Exh. A at 867. On January 28, 2013, the court held a telephone conference with the parties and affirmed its earlier judgment. Doc. 11, Exh. A at 567. MLF appealed both orders, and both were unanimously affirmed by the New York Appellate Division. Doc. 32-1. On June 10, 2014, the New York Court of Appeals denied leave to appeal. Doc. 34-1. Meanwhile, LFR filed a petition to enforce the judgment in the 55th

Judicial District Court of Harris County. Doc. 12, Exh. H. MLF responded with a motion for new trial, a motion for a stay, and counterclaims seeking an injunction against the New York judgment and damages. Doc. 12, Exh. I; Doc. 13, Exhs. N, O. On July 12, 2013, the Harris County District Court denied MLF's motion to stay enforcement of the New York judgment. Doc. 16, Exh. V. On September 9, 2013, on a motion for clarification, the Harris County District Court dismissed MLF's counterclaims. Doc. 16, Exh. X. Meanwhile, on August 8, 2013, MLF filed a complaint in this Court asserting identical claims as alleged in its counterclaim in the Harris County District Court.[1] Doc. 1.

## Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Factual matter is limited to "documents attached to or incorporated in the complaint and matters of which judicial notice may be taken." *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 379 (5th Cir. 2003).

## II.     Discussion

### A.     *Res Judicata*

A federal court determining the preclusive effect of a previous state court judgment applies the state law of res judicata. *Wainscott v. Dall. Cnty.*, 408 F. App'x. 813, 815 (5th Cir. 2011). Under Texas law, res judicata has three elements: (1) a prior final judgment on the merits

---

[1] MLF's current complaint alleges (1) violation of due process, (2) damages under §1983, (3) RICO violations, (4) conspiracy, (5) breach of contract, (6) fraud, (7) attorney's fees, and (8) actual and punitive damages. Doc. 1. MLF's Second Amended Counterclaim alleges (1) violation of due process, (2) damages under §1983, (3) RICO violations, and (4) conspiracy. Exh. U. MLF's Original Counterclaim in the Harris County District Court, re-alleged in the Second Amended Counterclaim, alleges (5) breach of contract, (6) fraud, (7) attorney's fees, and (8) actual and punitive damages. Exh. N.

by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996). Here, the Texas District Court reached a final judgment on the merits of MLF's due process, § 1983, and RICO claims against identical parties.[2] Doc. 16, Exh. U. *See Mossler v. Shields*, 818 S.W.2d 752, 754 (Tex. 1991) (per curiam) ("[I]t is well established that a dismissal with prejudice functions as a final determination on the merits."). Under New York law, res judicata provides that "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *O'Brien v. City of Syracuse*, 429 N.E.2d 1158, 1159 (1981). Here, the New York County Supreme Court reached a final conclusion on the merits of MLF's remaining claims of breach of contract, fraud, and actual and punitive damages claims, all of which arose from MLF's purported right to make draw requests which the court rejected under the clear terms of the Credit Agreement. Doc. 11, Exh. A at 43-44.

MLF's due process and § 1983 claims also fail under the largely redundant[3] Rooker-Feldman doctrine, which bars a party who loses in state court "from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005-1006 (1994); *see Bogney v. Jones*, 904 F.2d 272, 274 (5th Cir. 1990) ("The federal civil rights laws do not provide a vehicle to attack state court judgments nor to sanction the conduct of state court judges for actions taken within the scope of their judicial

---

[2] The Defendants apart from LFR are separately listed as Third Party Defendants in the First Amended Counterclaim filed in the state District Court, which was re-alleged in the Second Amended Counterclaim. Doc. 15, Exh. Q; Doc. 16, Exh. U.

[3] *See* "Res Judicata Between State and federal courts—'Rooker-Feldman'': Res Judicata as Jurisdiction," 18B Wright & Miller, Fed. Prac. & Proc. Juris. § 4469.1 (2d ed.).

authority."); *Carbonell v. Louisiana Dept. of Health & Human Res.*, 772 F.2d 185, 189 (5th Cir. 1985) (Section 1983 claim "challenging an adverse state-court judgment on the theory that the state administrative action therein upheld violated the plaintiff's constitutional rights . . . necessarily invites appellate review of the determinations of federal rights by the Louisiana court of appeal. That review is beyond the jurisdictional pale of the federal district court.").

### B. Failure to State a Claim

In addition, all of MLF's claims fail to meet the plausibility requirement of Rule 12(b)(6). The claims for breach of contract, fraud, and actual and punitive damages are not plausible under the terms of the Credit Agreement, which specifically disclaim any unilateral right of MLF to make draw requests (Doc. 11, Exh. A at 66, 73, 76) and waive MLF's right to counter-sue. Note, Doc. 11, Exh. A at 62 ("The Borrower also waives the right to interpose any setoff or counterclaim of any nature.").

> The undersigned also waives the right to interpose any defense, including but not limited to, those defenses based upon fraud or any statute of limitations or any claim of laches and any setoff or claim, deduction or counterclaim of any nature or description in any action or proceeding instituted by the Lender with respect to this guaranty or any matter arising herefrom or relating hereto.

Personal Guaranty, Doc. 11, Exh. A at 96.

> In any litigation or legal proceeding arising out of, or relating to, this agreement or any of the Liabilities or Security, in which the Lender and the undersigned shall be adverse parties, the undersigned waives the right to interpose any defense, set-off or counterclaim of any kind not directly arising herefrom or therefrom . . . .

Security Agreement, Doc. 11, Exh. A at 82. MLF alleges based on Stillwater's "reputation and self-marketing" MLF "believed that Stillwater had the financial capital to continue funding the loans under the contract no matter what the general economic climate might be." Doc. 29 ¶ 1. MLF does not, however, allege draw requests were refused during the term of the credit facility. MLF alleges when draw requests were refused, after the term of the credit facility, Stillwater

"continued to charge MLF a 2% fee in order to maintain a reserve account to insure that funds were available to fund Plaintiff's draw request. Doc. 29 ¶ 2. The Loan History, however, indicates the cited 2% (23.25% per annum) "fee" was actually the default interest rate. Doc. 11, Exh. A at 105-130, Doc. 11, Exh. A at 62. MLF does not allege racketeering or collection of an unlawful debt under RICO, much less meet the required heightened pleading requirements under the statute. 18 U.S.C. § 1962; *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229–31 (5th Cir. 2003). MLF's due process and § 1983 claims, which attack the judgments and apparently the integrity of the New York and Texas courts, are also without merit, as discussed below in regard to sanctions. *See* Doc. 22 ("[T]he actions of the New York Court and the Harris County District Court . . . violates MLF"S [sic] due process expectations . . . ."; citing *Davis v. Bayless & Stokes*, (5th Cir. 1995) ("Private individuals who conspire with state officials are not entitled to share in the judges' immunity from suit.") (citing *Sparks v. Duval County Ranch Co., Inc.*, 604 F.2d 976 (5th Cir. 1979) ("the doctrine of judicial immunity for persons who conspire with judges is without foundation in either reason or authority"))).

### C.    *Attorney's Fees*

Both parties seek attorney's fees. LFR seeks attorney's fees under the Note, which states:

> The Borrower agrees that if an attorney is retained to enforce or collect this Note or any other obligations by reason of non-payment of this Note when due or made due hereunder, a reasonable attorneys' fee shall be paid in addition, which fees shall be computed as follows: 15% of the principal, interest and all other sums due and owing to the Lender or holder or the reasonable value of the attorneys' services, whichever is greater.

Doc. 11, Exh. A at 62; *see also* Credit Agreement, Doc. 11, Exh. A at 75 ("The Borrower . . . shall . . . reimburse the Lender for all legal expenses incurred by the Lender in connection with the preparation and enforcement of this letter and the other Loan Documents."). LFR states it is "willing to accept" $382,629.56 in attorney's fees as the greater of 15% of amount due and

reasonable fees. Under New York law, provisions in loan documents for reasonable expenses in collecting a debt have "long been recognized as lawful and proper." *C.I.T. Leasing Corp. v. Brasmex - Brasil Minas Express LTDA.*, 03 CIV. 5077(DAB)FM, 2007 WL 840287 (S.D.N.Y. Mar. 20, 2007) (internal citations omitted). Such a provision, however, is strictly construed, since payment of fees is "in derogation of the normal presumption that each party will be required to bear its own fees." *Kleinberg v. Radian Group, Inc.*, 01 CIV.9295 RMB GWG, 2003 WL 22420501 (S.D.N.Y. Oct. 24, 2003), *report and recommendation adopted*, 01 CIV.9295 RMB GWG, 2003 WL 22723014 (S.D.N.Y. Nov. 18, 2003) (citing *F.H. Krear & Co. v. Nineteen Named Trs.,* 810 F.2d 1250, 1263 (2d Cir.1987)). Like Texas courts, New York courts apply a reasonableness test to fixed percentage fees. *F.H. Krear*, 810 F.2d at 1263; *see Diamond D Enterprises USA, Inc. v. Steinsvaag*, 979 F.2d 14, 20 (2d Cir. 1992) (citing cases in which "fee awards of fifteen to thirty percent of the amount recovered are not automatically held reasonable"); *Fed. Deposit Ins. Corp. v. Park Lane Realty Associates*, 72 A.D.2d 788, 789, 421 N.Y.S.2d 611, 613 (N.Y. App. Div. 1979) (holding it was incumbent on lower court to conduct a hearing on reasonableness of provision for fee in the amount of 15% of Note); *Fed. Deposit Ins. Corp. v. Hyer*, 66 A.D.2d 521, 530, 413 N.Y.S.2d 939, 944 (N.Y. App. Div. 1979) (same); *Equitable Lumber Corp. v. IPA Land Dev. Corp.*, 38 N.Y.2d 516, 521, 344 N.E.2d 391, 395 (1976) (30% fee not necessarily reasonable since "[a]t the time of contracting the attorney's fees were arguably incapable of estimation. The amount required for attorney's fees would vary with the nature of the defaulting party's breach."). In determining reasonableness of fees, New York courts begin with a lodestar calculation and consider a "variety of factors . . . including the difficulty of the questions involved; the skill required to handle the problem; the time and labor required; the lawyer's experience, ability and reputation; the customary fee charged by the Bar

for similar services; and the amount involved." *F.H. Krear*, 810 F.2d at 1263; *see also Expeditors Intern. of Washington, Inc. v. Rubie's Costume Co., Inc.*, 03 CV 3333(SLT)WDW, 2007 WL 430096, at *1 n.2 (E.D.N.Y. Feb. 2, 2007) ("New York courts frequently look to federal case law in determining whether an award of attorney's fees is reasonable."); *Gillberg v. Shea*, 95 CIV. 4247 KMW, 1996 WL 406682 (S.D.N.Y. May 31, 1996) (granting fee award of $6,000 in loan default cause where $9,000 was requested and "the amount in controversy on plaintiff's claim is $100,000, the amount of the Note, and defendant's liability on the Note involved simple factual and legal issues (indeed, virtually no dispute)"); *C.I.T. Leasing Corp. v. Brasmex - Brasil Minas Express LTDA.*, 03 CIV. 5077(DAB)FM, 2007 WL 840287 (S.D.N.Y. Mar. 20, 2007) (granting fee award of $482,840.25 for litigation of unpaid past and future payments and related costs of $11,731,386.46, based on market rates in New York and Brazil); *Libra Bank Ltd. v. Banco Nacional De Costa Rica, S.A.*, 570 F. Supp. 870, 896 (S.D.N.Y. 1983) (granting fee award of $425,200 where $531,500 was requested, "a reduction of 20%" due to overstaffing in case arising from default of $40 million loan to the government of Costa Rica); *see also Fed. Deposit Ins. Corp. v. Hadid*, 947 F.2d 1153, 1158 (4th Cir. 1991) (rejecting 15% award of $272,035 where proved fees were only $99,861, stating 15% provision "amounts to a windfall, or even a penalty, that the District of Columbia courts will not permit."). Creditors may not recover on contractual attorney's fees until expenses have actually occurred. *Mead v. First Trust & Deposit Co.*, 60 A.D.2d 71, 78, 400 N.Y.S.2d 936, 939 (N.Y. App. Div. 1977).

### D.    Sanctions

LFR also seeks attorney's fees under Rule 11(b) on grounds of frivolous and subjectively false pleadings. In particular, LFR argues MLF alleged three falsehoods: (1) "they were deprived of the right to submit evidence at oral argument," (2) "they were required to post a bond to

litigate in the New York Supreme Court," and (3) an allegation by MLF that "LFR claimed it was a holder in due course." Doc. 11 at 40.

In regard to the first allegation, MLF stated the New York decision was made in a "summary proceeding under New York procedural law allowing no substantial due process, no discovery, no counterclaims and no method of presenting evidence into the record at the time of the summary judgment hearing." Docs. 1 ¶ 9; 22 ¶ 6; 29 ¶ 6. Judge Kapnick's ruling was made under an expedited procedure for loan default cases called summary judgment in lieu of a complaint, provided by Section 3213 of New York Civil Practice Law and Rules:

> When an action is based upon an instrument for the payment of money only or upon any judgment, the plaintiff may serve with the summons a notice of motion for summary judgment and the supporting papers in lieu of a complaint. The summons served with such motion papers shall require the defendant to submit answering papers on the motion within the time provided in the notice of motion.

N.Y. C.P.L.R. 3213 (McKinney); *Schulz v. Barrows*, 730 N.E.2d 946, 948 (N.Y. 2000) (characterizing procedure as a "'motion-action' for summary judgment, bypassing pleading, motion and discovery delays"). Given an express loan agreement, the nonmovant must produce evidence to attack the validity of the agreement:

> [I]f a prima facie case would be made out by the instrument and a failure to make the payments called for by its terms, the moving party would be entitled to summary judgment unless the other party came forward with evidentiary proof sufficient to raise an issue as to the defenses to the instrument.

*New Rochelle Dodge, Inc. v. Bank of New York*, 511 N.Y.S.2d 663, 665 (N.Y. App. Div. 1987). Section 3213 does not limit, rather it requires, the nonmovant to put forth summary judgment evidence, although the opportunity for discovery is reduced insofar as the deadline for response is accelerated by combining the complaint with the motion. *See* 2PT1 West's McKinney's Forms Civil Practice Law and Rules § 5:199 ("The usual standards for summary judgment motions apply to N.Y. C.P.L.R. 3213 motions. . . . Use of N.Y. C.P.L.R. 3213 rather than N.Y. C.P.L.R.

3212 [providing for motions for summary judgment] gains plaintiff at most a little time, probably less than a month."). During the hearing on the motion, MLF opposed the motion on grounds that it had not yet engaged in discovery "to find out really why [Defendants] did not fund" draw requests after the term of the credit facility. Doc. 11, Exh. A at 38. MLF pointed to the fact that draw requests were denied even though MLF had not reached its credit limit at the end of the term of the credit facility.   The judge responded, "Well, I appreciate you bringing it to the Court's attention, this distinction. However, with all due respect, I don't think that that distinction is sufficient to deny the motion for summary judgment in lieu of complaint." Doc. 11, Exh. A at 43. On motion to reargue, MLF attached an affidavit from Matthews with exhibits supporting its theory regarding Defendants' reason not to fund draw requests after the term of the credit facility. Doc. 11, Exh. A at 575. The exhibits included e-mails between MLF and agents of Defendants. In addition, MLF included affidavits from Defendant Jack Doueck and an agent of Stillwater Defendants, which had been submitted in other cases. Doc. 11, Exh. A at 648, 652. MLF argued the e-mails "make it very clear that what the defendants have alleged all along is true. That Stillwater lacked the means to fund the loan." Doc. 11, Exh. A at 559. MLF argued summary judgment was inappropriate as MLF had not had an opportunity to take additional testimony from the same agent of Stillwater Defendants who had submitted an affidavit "to determine whether the reason that there was funding not made to defendants was because Stillwater . . . lacked the means to do so, which is what we've alleged all along." Doc. 11, Exh. A at 562. The judge entered a judgment affirming its earlier summary judgment, stating: "Even if the documents newly submitted herein had been submitted at the time the original motion was heard by the Court, they would not have changed this Court's decision." Doc. 11, Exh. A at 551.

Contrary to MLF's allegations in this suit, the record indicates the New York did provide MLF an opportunity to present summary judgment evidence at two hearings and in its response and motion for reargument. MLF's allegations that the New York procedure allowed no substantial due process, discovery, or counterclaims also lack evidentiary support under Rule 11(b).  MLF alleges, "LFR's summary proceeding against Plaintiffs is based on an affidavit that contains unauthenticated documents that requires the Judge to whom that case is assigned to presume that the facts contained in the affidavit are true." Doc. 1 ¶ 9; 22 ¶ 6; 29 ¶ 6. On the contrary, Defendants had the burden on summary judgment. In order to file its motion for summary judgment in lieu of complaint, Defendants had the initial burden of producing a credit agreement showing an "independent, absolute, unconditional obligation to pay" and an affidavit of nonpayment. *Nordea Bank Finland PLC v. Holten*, 84 A.D.3d 589, 290 (1st Dep't 2011).

In regard to the second alleged falsehood, MLF stated in its pleadings: "Because the laws of New York allow for a summary proceeding to be filed for the collection of money owed on indebtedness, like that to which these Plaintiffs are a party, the Plaintiffs are prohibited from challenging the propriety of the underlying claims without posting a surety bond. Doc. 1 ¶ 22; Doc. 22 ¶ 19; Doc. 29 ¶ 19. As described above, MLF had an opportunity to respond and submit evidence at two hearings and in its response and motion for reargument. Defendants concede MLF was required to post a surety bond to stay the enforcement of the judgment during the pendency of their appeal. Doc. 11-1 at 25 n.4.

In regard to the third alleged falsehood, MLF stated in pleadings: "[I]n failing to inform . . . that LFR was not a holder in due course, the Defendants sought and  obtained the Judgment in this cause by fraud." Doc. 1 ¶ 45; *see also* 1 ¶ 9; 22¶ 6; 29 ¶ 6 ("LFR is not a holder in due course of the Plaintiffs loan documents."). Here, Defendants appear to be misstating the

record. MLF never states "LFR claimed it was a holder in due course," as alleged by Defendants. Doc. 11 at 40. MLF's statement that LFR was not a holder in due course may have been insufficient to attack the enforceability of the Credit Agreement, but it was a true statement. The statement that LFR's failure to inform that it was not a holder in due course is tantamount to fraud, however, is not warranted by existing law. Fed. R. Civ. P. 11(b)(2).

Beyond the three alleged falsehoods, MLF's due process, § 1983, and RICO claims in this suit are not warranted by existing law under Rule 11. Not only did the New York judge give MLF a fair opportunity to produce evidence regarding its unpaid loan, despite the express terms of the Credit Agreement, but the exact same claims were resolved by the Harris County District Court and no nonfrivolous argument can be made they were not barred by the basic principle of res judicata.

## III.    Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that the Motion to Dismiss filed by Defendants LFR Collections LLC and Partner Reinsurance Ltd. (Doc. 11) and the Motion to Dismiss filed by Defendants Stillwater Capital Partners, LLC, Stillwater Funding, LLC, Gerova Asset-Backed Holdings, LP, formerly known as Stillwater Asset-Backed Fund, LP, Richard Rudy and Jack Doueck (Doc. 21) are **GRANTED**.

**ORDERED** that Defendants are entitled to reasonable attorney fees under the terms of the Note and under Rule 11 and shall file within twenty (20) days a request for a specific amount with supporting documentation in accordance with *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).

SIGNED at Houston, Texas, this 4th day of February, 2015.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE